# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DELIZIA LIMITED, | ) | Case No. 09-Civ-3572 (LTS) (AJP) |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -against- | ) | |
| | ) | |
| THE STATE OF ERITREA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DELIZIA LIMITED'S PETITION TO CONFIRM ARBITRATION
AWARD AND IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
(212) 277-6500
Attorneys for Petitioner Delizia Limited

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ......................................................... 1

STATEMENT OF THE FACTS .......................................................... 1

    The Contract And Commercial Invoice ........................................ 1

    Delizia's Good Faith Attempts To Negotiate With Eritrea ................. 3

    The Arbitration Proceeding......................................................... 3

    The Arbitration Award................................................................ 5

    Procedural History Of This Action ............................................... 7

ARGUMENT .................................................................................. 7

I.     PETITIONER'S MOTION FOR CONFIRMATION OF THE ARBITRATION AWARD SHOULD BE GRANTED IN ITS ENTIRETY ................................. 7

    A.    The Arbitration Award Is Governed By The New York Convention.................. 8

    B.    Eritrea Is Precluded From Receiving Sovereign Immunity Pursuant To The Arbitration Exception Of The Foreign Sovereign Immunities Act ................. 9

    C.    The Arbitration Award Is A Final And Binding Award That Satisfies The Requirements Of The New York Convention ....................................... 11

II.    PETITIONER'S MOTION FOR ENTRY OF A DEFAULT JUDGMENT FOR FAILURE TO TIMELY RESPOND TO THE PETITION TO CONFIRM THE ARBITRATION AWARD SHOULD BE GRANTED IN ITS ENTIRETY ................... 14

CONCLUSION................................................................................ 17

DOCSNY-383831v01

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                   Page(s)

<u>Brandeis Intsel Ltd. v. Calabrian Chems. Corp.</u>, 656 F. Supp. 160 (S.D.N.Y. 1987) .................12

<u>Bunge Agribus. Singapore Pte. Ltd. v. San He Hope Full Grain Oil Foods Prod. Co.</u>,
    No. 09 Civ. 4708 (SAS), 2009 WL 3050058 (S.D.N.Y. Sept. 23, 2009) ...................14, 15, 16

<u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>,
    991 F.2d 1012 (2d Cir. 1993).................................................................................11

<u>CME Media Enters. B.V. v. Zelezny</u>, No. 01 Civ 1733 (DC), 2001 WL 1035138
    (S.D.N.Y. Sept. 10, 2001).....................................................................................10

<u>Convergia Networks, Inc. v. Huawei Techs. Co.</u>, No. 06 Civ. 6191 (PKC),
    2008 WL 4787503 (S.D.N.Y. Oct. 30, 2008) .......................................................14

<u>Creighton Ltd. v. Gov't of State of Qatar</u>, 181 F.3d 118 (D.C. Cir. 1999)....................................11

<u>Energoinvest DD v. Democratic Republic of Congo</u>, 355 F. Supp. 2d 9 (D.D.C. 2004)..............17

<u>Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan</u>, 582 F.3d 393
    (2d Cir. 2009)......................................................................................................10

<u>Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.</u>, 284 F.3d 1114
    (9th Cir. 2002)....................................................................................................10

<u>Hall Street Assocs., L.L.C. v. Mattel, Inc.</u>, 522 U.S. 576 (2008) ....................................................12

<u>Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial y Comercial</u>,
    745 F. Supp. 172 (S.D.N.Y. 1990) .....................................................................12

<u>Ipitrade Int'l, S.A. v. Federal Republic of Nigeria</u>, 465 F. Supp. 824 (D.D.C. 1978)...................17

<u>Jugometal v. Samincorp, Inc.</u>, 78 F.R.D. 504 (S.D.N.Y. 1978) ........................................................9

<u>La Societe Nationale Pour La Recherche, La Production, Le Transport, La
    Transformation et La Commercialisation des Hydrocarbures v. Shaheen Natural Res.
    Co.</u>, 585 F. Supp. 57 (S.D.N.Y. 1983), <u>aff'd</u>, 733 F.2d 260 (2d Cir. 1984) .......................8, 14

<u>M&C Corp. v. Erwin Behr GmbH & Co., KG</u>, 87 F.3d 844 (6th Cir. 1996) .................................8

<u>McCarthey Invs. LLC v. Shah</u>, Nos. 07 Civ. 5617 (DLC), 07 Civ. 5618 (DLC),
    07 Civ. 5619 (DLC), 2007 WL 3254418 (S.D.N.Y. Nov. 1, 2007) ................................11, 12

<u>Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier
    (RAKTA)</u>, 508 F.2d 969 (2d Cir. 1974).................................................................14

DOCSNY-383831v01

CASES (cont.)                                                                                     Page(s)

Phoenix Aktiengesellschaft v. Ecoplas, Inc., 391 F.3d 433 (2d Cir. 2004).................................15

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) ...........................................10

S & Davis Int'l, Inc. v. Republic of Yemen, 218 F.3d 1292 (11th Cir. 2000) ...........................11

Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974).........................................................8

Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15
    (2d Cir. 1997).......................................................................................8, 11, 12

Zeiler v. Deitsch, 500 F.3d 157 (2d Cir. 2007)..............................................................11

STATUTES

9 U.S.C. § 10........................................................................................................11

9 U.S.C. § 11........................................................................................................11

9 U.S.C. § 201........................................................................................................8

9 U.S.C. § 202........................................................................................................9

9 U.S.C. § 207....................................................................................................11, 14

28 U.S.C. § 1330(a)..................................................................................................9

28 U.S.C. § 1330(b)................................................................................................10

28 U.S.C. § 1604....................................................................................................10

28 U.S.C. § 1605(a)(6)............................................................................................10

OTHER AUTHORITIES

Convention on the Recognition and Enforcement of Foreign Arbitral Awards ...................8, 9, 12

DOCSNY-383831v01

Petitioner Delizia Limited ("Delizia" or "Petitioner"), by its attorneys Dickstein Shapiro LLP, respectfully submits this memorandum of law in further support of its Petition to confirm the final arbitration award rendered against respondent The State of Eritrea ("Respondent" or "Eritrea") on April 18, 2006 (the "Arbitration Award"), by a duly convened arbitral tribunal (the "Arbitral Tribunal") of the Arbitration Institute of the Stockholm Chamber of Commerce (the "SCC Institute"), and for entry of a default judgment against Respondent for failure to timely respond to the Petition to Confirm the Arbitration Award (the "Petition").   (A copy of the Arbitration Award is annexed to the Petition as Exhibit A.)

## PRELIMINARY STATEMENT

The threshold issue before this Court is straightforward: whether a foreign arbitration award rendered in strict accordance with an arbitration agreement by a duly authorized arbitral tribunal should be confirmed as a final and binding determination.  As discussed below, there are no grounds to vacate the Arbitration Award rendered in this case, and it therefore should be confirmed in its entirety.

Further, the Petition was timely filed, and service was properly effectuated on Eritrea, pursuant to the relevant provision of the Foreign Sovereign Immunities Act.  To date, Eritrea has failed to answer or otherwise respond to the Petition, and its time within which to do so expired on August 18, 2009.  Accordingly, a default judgment should be entered against Eritrea in the amount set forth in the Arbitration Award.

## STATEMENT OF THE FACTS

### The Contract And Commercial Invoice

On or about June 22, 2003, Delizia and the Ministry of Defence of the State of Eritrea – Eritrean Airforce (the "Ministry of Defence") entered into a contract, whereby Delizia agreed to sell defense-related equipment and materials to the Ministry of Defence for $12,370,070 (the

"Contract").    Declaration of Yehuda Tunik In Support Of Delizia's Motion For Default Judgment, dated September 22, 2009 (the "Tunik Declaration") ¶ 3.  (A copy of the contract is annexed to the Petition as Exhibit B.)

The Contract contains a broad arbitration clause (the "Arbitration Clause") that provides:

a)    In case of disputes about the interpretation or failure by either Party on the implementation of the present Contract, the Parties will try to settle the dispute by amicable negotiation, failing which, the issue causing the dispute so documented on paper, will be submitted to the International Commercial Arbitration Court in Stockholm, Sweden.

b)    The arbitration decision shall be final and binding on both parties.[1]

Pet. Ex. B art. 9.

Delizia and Eritrea subsequently entered into Commercial Invoice No. 102/03/ER, which directly related to the Contract.    Tunik Decl. ¶ 5.  (A copy of Commercial Invoice No. 102/03/ER is annexed to the Petition as Exhibit C.)  The commercial invoice did not include a separate arbitration clause.  Id.  However, the Arbitral Tribunal held that the invoice was "a supplement to the transactions in the [June 22, 2003] Contract, to which the same general conditions, including the [A]rbitration [C]lause, should apply."  Pet. Ex. A at 22.  To the extent that one item in the invoice could not be linked to the June 22, 2003 Contract, the Arbitral Tribunal determined that such equipment was beyond the scope of the Arbitration Clause and therefore was not within the Arbitral Tribunal's jurisdiction.  Id. at 22-23, 26.

Although the Contract and the Commercial Invoice referenced the Ministry of Defence, and not Eritrea as a party, the Arbitral Tribunal determined that Eritrea was the proper respondent in the arbitration proceedings.  Pet. Ex. A at 21-22.  The Arbitral Tribunal clarified

---

[1]    A second contract executed between the same parties on April 4, 2002, contained the same arbitration provision.  Delizia, however, withdrew all claims related to that contract during the course of the arbitration proceedings.

2

that Eritrea was bound by the Arbitration Clause and subject to jurisdiction because the Ministry of Defence "is an organ of the State of Eritrea." Id. at 21.

## Delizia's Good Faith Attempts To Negotiate With Eritrea

In or about May 2004, after Eritrea failed to make payments under the Contract, Delizia began contacting Eritrean officials in an attempt to resolve the payment dispute "by amicable negotiation" – as required by Article 9 of the Contract. Tunik Decl. ¶ 7; Pet., Ex. B art. 9.

Specifically, in a facsimile dated May 6, 2004, Delizia's counsel, Mr. M. Rubin, contacted Mr. Hagos Ghebrehiwet, Eritrea's Head of Economic Affairs, and requested Eritrea's performance of its obligations. Tunik Decl. ¶ 7. (A copy of this facsimile is annexed to the Tunik Declaration as Exhibit 1.) A second facsimile requesting payment, dated June 10, 2004, was sent by Mr. Alex Volfovich, Director of Delizia, to Major-General Teclay H/Selassie, the Commander in Chief of the Eritrean Air Force, and Mr. Hagos Ghebrehiwet. Tunik Decl. ¶ 8. (A copy of this facsimile is annexed to the Tunik Declaration as Exhibit 2.) On or about June 15, 2004, the Commander in Chief of the Eritrean Air Force notified Delizia via facsimile that Eritrea disputed whether payment was due, and Delizia's attorney contested Eritrea's grounds for non-payment in a subsequent facsimile, dated on or about June 30, 2004. Tunik Decl. ¶ 9. (Copies of the June 15, 2004 and June 30, 2004 facsimiles are annexed to the Tunik Declaration as Exhibits 3 and 4, respectively.) In a facsimile dated September 21, 2004, Mr. Volfovich sent a final request for payment and compliance with the terms of the Contract to Issayas Afewerki, the President of the State of Eritrea. Tunik Decl. ¶ 10. (A copy of this facsimile is annexed to the Tuink Declaration as Exhibit 5.)

## The Arbitration Proceeding

On or about January 31, 2005, after good faith negotiations failed, Delizia submitted a Request for Arbitration to the SCC Institute, asserting several breach of contract and damage

3

claims against Eritrea. Tunik Decl. ¶ 11; Pet. Ex. A at 9. Despite the initial correspondence it maintained with the SCC Institute through the Ministry of Defence and the Eritrean Embassy in Sweden, Eritrea never responded to Delizia's claims set forth in the Request for Arbitration. Tunik Decl. ¶ 12, Ex. 6 ¶¶ 2-6; Pet. Ex. A at 9-10.

On April 10, 2005, and May 12, 2005, the action proceeded with the appointment of three arbitrators. Tunik Decl. ¶ 13; Pet. Ex. A at 9. Although Eritrea, Delizia, and the SCC Institute were permitted to each appoint one arbitrator, the SCC Institute ultimately appointed an arbitrator on behalf of Eritrea, because Eritrea did not participate in the selection process. Tunik Decl. ¶ 13; Pet. Ex. A at 9. On June 21, 2005, Delizia submitted a brief in support of its Request For Rendering An Award to the Arbitral Tribunal, and after Delizia advanced all of the arbitration costs, the SCC Institute officially referred the case to the Arbitral Tribunal. Tunik Decl. ¶ 14; Ex. 6; see also Pet. Ex. A at 9-10.

Throughout the course of the arbitration proceedings, the Arbitral Tribunal made concerted efforts to contact Eritrea. See generally Tunik Decl. ¶¶ 15-16; Pet. Ex. A at 19-20. In a November 7, 2005 letter sent by courier service to the Ministry of Defence in Asmara, the Arbitral Tribunal invited Eritrea to submit a Statement of Defence. Tunik Decl. ¶ 15; Petition Ex. A at 10. Once again, Eritrea failed to respond. Tunik Decl. ¶ 15; Pet. Ex. A at 10. Undeterred by Eritrea's silence, on December 14, 2005 and January 23, 2006, the Arbitral Tribunal issued several sets of questions and permitted the submission of additional documents with ample time for the parties to comment on the submissions. Tunik Decl. ¶ 16, Exs. 7, 8; see also Pet. Ex. A at 10. Delizia fully participated in the arbitration process, while Eritrea remained unresponsive. Tunik Decl. ¶ 16; Pet. Ex. A at 10. Upon receipt of Delizia's submissions and in the absence of a request for an oral hearing, the Arbitral Tribunal notified the parties that it

would decide the case based on the submissions received, unless it subsequently determined an oral hearing was necessary.  Tunik Decl. ¶ 17; Pet. Ex. A at 10.

**The Arbitration Award**

On or about April 18, 2006, after full deliberation, the Arbitral Tribunal issued a final Arbitration Award.  Tunik Decl. ¶ 18; see generally Pet. Ex. A.  Prior to a discussion of the merits, the Arbitral Tribunal explained that it had provided Eritrea with ample opportunity to participate in the proceedings:

> [T]he Arbitral Tribunal notes that its request of 7 November 2005 that the State of Eritrea should submit a Statement of Defence was communicated to the Ministry of Defence of the State of Eritrea by courier service and was delivered to the Ministry on 10 November 2005.  Moreover, the Arbitral Tribunal's letter of 23 January 2006, which contained questions to both parties, was communicated to the Ministry of Defence by courier service and was received by the Ministry on 26 January 2006.  All other letters and documents in this case have also been sent to the Ministry of Defence, most of them by courier and the rest by fax and e-mail.  Since there had been, before the case was referred to the Arbitral Tribunal, some contact between the SCC Institute and the Embassy of the State of Eritrea in Sweden, the Arbitral Tribunal has also sent copies, by fax, mail or e-mail, of all relevant documents in this case to the Embassy.  Furthermore, at the Arbitral Tribunal's request, Delizia has sent copies of certain submissions and documents by fax and e-mail to the Ministry of Defence and the Embassy.

Pet. Ex. A at 19-20.

Accordingly, the Arbitral Tribunal found that, despite Eritrea's complete failure to participate in any of the arbitration proceedings, it maintained the authority to issue an award, pursuant to Article 28 of the Rules of the SCC Institute and Section 24 of the Swedish Arbitration Act:

> However, despite the failure of the State of Eritrea to participate in the proceedings, the Arbitral Tribunal must examine whether or to what extent Delizia's claims are justified.  The Arbitral Tribunal refers in this respect to Article 28 of the Rules of the SCC Institute which provides that, if any of the parties, without showing valid cause, fails to appear at a hearing or otherwise fails to comply with an order of the Arbitral Tribunal, such

DOCSNY-383831v01

failure shall not prevent the Arbitral Tribunal from proceeding with the case nor from rendering an award. This Article is almost identical to Section 24 third paragraph of the Swedish Arbitration Act (*lag 1999:116 om skiljeförfarande*) which provides that, where one of the parties, without valid cause, fails to appear at a hearing or otherwise fails to comply with an order of the arbitrators, such failure shall not prevent a continuation of the proceedings and a resolution of the dispute on the basis of the existing materials.

Pet. Ex. A at 20. <u>See also</u> Tunik Decl. ¶ 19.

The Arbitration Award, rendered pursuant to the Arbitration Clause in Delizia's Contract with the Ministry of Defence, is a detailed, thirty-page document that fully analyzes the claims presented, and is a final award pursuant to rules and procedures of the SCC Institute. Tunik Decl. ¶ 20; Pet. Ex. A at 20-22. Pursuant to its well-reasoned Arbitration Award, the Arbitral Tribunal awarded Delizia the following sums:

(i) US $2,175,775 and interest on that amount at an annual rate of six percent from January 31, 2005, until full payment is made;

(ii) Legal fees in the amount of US $163,183 and interest on that amount at an annual rate of six percent from April 18, 2006, the date of the Arbitration Award, until full payment is made; and

(iii) One-half the amount of arbitration fees paid by Delizia, in the amount of Euro €43,374 and Swedish kronor SEK 4,250 with interest thereon at an annual rate of six percent from April 18, 2006, the date of the Arbitration Award, until full payment is made.

<u>See</u> Pet. Ex. A at 29-30; Tunik Decl. ¶ 21.

The Arbitration Award is final and binding on all the parties, as Eritrea did not contest the Arbitration Award by lodging an appeal with the Stockholm District Court within three months of the day on which it received the Arbitration Award. <u>See</u> Tunik Decl. ¶ 23; Pet. Ex. A

DOCSNY-383831v01

at 30.[2]  Delizia has not confirmed the Arbitration Award in any other jurisdiction; nor has it collected any of the sums awarded.  Tunik Decl. ¶ 23.

**Procedural History Of This Action**

Delizia became aware of the bank accounts maintained by Eritrea and its business activities in this jurisdiction and, on or around April 8, 2009, filed the Petition herein pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), implemented by 9 U.S.C. §§ 201-208.  Declaration of Lindsay A. Bush in Support of Delizia's Motion for Default Judgment (the "Bush Declaration") ¶ 3.  Service was effectuated on Respondent, pursuant to the Foreign Sovereign Immunities Act, on June 19, 2009. Id. ¶ 4.  Respondent was required to serve an answer or other responsive pleading within sixty (60) days after service was effectuated.  Id. ¶ 6.  To date, Respondent has failed to answer or otherwise respond to the Petition.  Id.  The Clerk of this Court signed the Clerk's Certificate of Default, noting the default of the Respondent, on September 10, 2009.  Id. ¶ 8, Ex. C. Accordingly, it is proper for this Court grant Delizia's motion and enter a default judgment against Respondent.

## ARGUMENT

**I.   PETITIONER'S MOTION FOR CONFIRMATION OF THE ARBITRATION AWARD SHOULD BE GRANTED IN ITS ENTIRETY**

The Arbitration Award was rendered in accordance with the procedures of the SCC Institute and the United Nations Convention on the Recognition and Enforcement of Foreign

---

[2]     As evidenced by the certification stamp on the last page of the Arbitration Award, the Award was transmitted to The Embassy of the State of Eritrea in Stockholm again on or around March 5, 2007.  Tunik Decl. ¶ 22; Pet. Ex. A (last page of exhibit).

DOCSNY-383831v01

Arbitral Awards (the "New York Convention" or the "Convention"), and therefore should be confirmed as a final and binding judgment on the parties.[3]

### A.    The Arbitration Award Is Governed By The New York Convention

The New York Convention, implemented by Article 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, is a multilateral treaty enacted "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

The Convention requires the recognition and enforcement of foreign arbitration awards that are made "in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention art. I(1); 9 U.S.C. § 201; see also La Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Shaheen Natural Res. Co., 585 F. Supp. 57, 64 (S.D.N.Y. 1983) (explaining that the Convention applies only to signatory countries), aff'd, 733 F.2d 260 (2d Cir. 1984).  Because the critical focus of the New York Convention is on the situs of the arbitration, rather than the nationality of the party seeking enforcement, it is irrelevant that Eritrea has not acceded to the Convention.  See id. at 64 ("Indeed, arbitration awards rendered by

---

[3]    The Federal Arbitration Act (the "FAA"), to the extent it does not conflict with the New York Convention, may also govern the substance of the Arbitration Award at issue because the underlying Contract affects commerce.  See, e.g., Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) ("[T]he FAA and the Convention have 'overlapping coverage' to the extent that they do not conflict."); see also M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 (6th Cir. 1996) ("Although the New York Convention, and not the Federal Arbitration Act, usually applies to federal court proceedings to recognize or enforce arbitration awards made in *other* nations, 9 U.S.C. § 208 provides that the Federal Arbitration Act may apply to actions brought pursuant to the New York Convention 'to the extent that [the Federal Arbitration Act] is not in conflict with [9 U.S.C. §§ 201-208] or the Convention as ratified by the United States.'" (alterations in original))  Given the limited application of the FAA to the issues discussed herein, we do not discuss the FAA at length.

DOCSNY-383831v01

panels sitting in contracting countries have been confirmed consistently when the plaintiff is a national of a country which has not acceded to the Convention."); Jugometal v. Samincorp, Inc., 78 F.R.D. 504, 505 (S.D.N.Y. 1978) (confirming arbitration award rendered in France that was obtained by a Yugoslavian corporation because France was a signatory to the Convention and it was inconsequential that Yugoslavia was a non-signatory).

Further, pursuant to the United States' implementation of the Convention, the arbitration award or agreement also must arise out of a legal relationship that is commercial in nature. 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention."); New York Convention art. I(1), (3).

Here, the instant Arbitration Award clearly comes within the provisions of the New York Convention. The Arbitration Award arose out of a commercial dispute concerning a legal relationship, specifically a contract for the sale of goods between Delizia and the Ministry of Defence. Both Sweden, the situs of the arbitration, and the United States are signatories to the New York Convention.

**B.     Eritrea Is Precluded From Receiving Sovereign Immunity Pursuant To The Arbitration Exception Of The Foreign Sovereign Immunities Act**

The Foreign Sovereign Immunities Act ("FSIA") provides:

> [D]istrict courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).[4] Accordingly, when asserting an action against a foreign state, a party must overcome the presumption of sovereign immunity by demonstrating that the action comes within

---

[4]      In regard to personal jurisdiction, the FSIA provides:

9

one of the FSIA's statutorily defined exceptions.[5]  28 U.S.C. § 1604; Republic of Argentina v.

Weltover, Inc., 504 U.S. 607, 610-11 (1992).  The arbitration exception of the FSIA provides:

> A foreign state shall not be immune from the jurisdiction of courts of the
> United States or of the States in any case --
>
> . . . .
>
>      (6) in which the action is brought, . . . to confirm an award made
> pursuant to such an agreement to arbitrate, if . . . (B) the agreement or
> award is or may be governed by a treaty or other international agreement
> in force for the United States calling for the recognition and enforcement
> of arbitral awards, . . . .

28 U.S.C. § 1605(a)(6).

In the present case, Eritrea cannot receive sovereign immunity because (as set forth more

fully above) the Arbitration Award rendered by the SCC Institute is governed by the New York

---

> (b) Personal jurisdiction over a foreign state shall exist as to every
> claim for relief over which the district courts have jurisdiction under
> subsection (a) where service has been made under section 1608 of this
> title.

28 U.S.C. § 1330(b).

[5]     The Second Circuit recently held that, pursuant to the FSIA, foreign countries are not
entitled to the protection of the Due Process Clause in actions to confirm a foreign arbitration
award.  Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan, 582 F.3d 393, 398-400
(2d Cir. 2009).  While a minimum contacts analysis is no longer necessary, the Frontera Court
also held that personal or quasi-in-rem jurisdiction is required to confirm an arbitration award
under the New York Convention.  Id. at 396-99.  In accordance with the holdings in Frontera,
this Court can enforce an arbitration award against a foreign sovereign based on quasi-in-rem
jurisdiction so long as the sovereign maintains property in the forum; a relationship between the
property and the underlying controversy is unnecessary.  Glencore Grain Rotterdam B.V. v.
Shivnath Rai Harnarain Co., 284 F.3d 1114, 1127 (9th Cir. 2002); CME Media Enters. B.V. v.
Zelezny, No. 01 Civ 1733 (DC), 2001 WL 1035138, at *4-5 (S.D.N.Y. Sept. 10, 2001)
(confirming arbitration award under the New York Convention on the basis of quasi in rem
jurisdiction because the foreign defendant had a Citibank account in New York).

     Eritrea has assets in a Citibank account in New York.  Tunik Decl. ¶ 24.  Indeed, Eritrea
used that Citibank account, which appears to serve as a correspondent bank account, to make
several payments to Delizia for goods received under the disputed contract.  Id.  In addition,
Eritrea also owns a condominium in New York, New York.  Id. ¶ 25.  Therefore, this Court has
quasi-in-rem jurisdiction over Eritrea.

DOCSNY-383831v01

Convention.  See Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1018 (2d Cir. 1993) ("[T]he [New York] Convention is exactly the sort of treaty Congress intended to include in the arbitration exception."); S & Davis Int'l, Inc. v. Republic of Yemen, 218 F.3d 1292, 1302 (11th Cir. 2000); Creighton Ltd. v. Gov't of State of Qatar, 181 F.3d 118, 123-24 (D.C. Cir. 1999).

### C.   The Arbitration Award Is A Final And Binding Award That Satisfies The Requirements Of The New York Convention

Confirmation of a foreign arbitration award under the New York Convention is a summary proceeding that "does little more than give the award the force of a court order." Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007).[6]  A foreign arbitration award should receive confirmation "unless [the court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

The narrow grounds for resisting confirmation under the New York Convention are as follows:

> [1.] (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

---

[6]      While the FAA is not discussed in depth herein for the reasons set forth above (see supra note 3), we note that, similar to the New York Convention, the grounds enumerated by the FAA for vacating an arbitration award are extremely narrow and "involve corruption, fraud, or some other impropriety on the part of the arbitrators."  McCarthey Invs. LLC v. Shah, Nos. 07 Civ. 5617 (DLC), 07 Civ. 5618 (DLC), 07 Civ. 5619 (DLC), 2007 WL 3254418, at *2 (S.D.N.Y. Nov. 1, 2007) (internal quotation mark omitted); see generally 9 U.S.C. §§ 10-11. In cases under the New York Convention, however, "to the extent that the Convention prescribes the exclusive grounds for relief from an award under the Convention, that application of the FAA's implied grounds would be in conflict, and is thus precluded."  Yusuf Ahmed Alghanim & Sons, 126 F.3d at 20.

11

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

. . . .

[2.] (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to public policy of that country.

New York Convention art. V.[7]

---

[7]      In addition to the statutory authority under the FAA, in the Second Circuit, courts arguably may also vacate an award if it exhibits a "manifest disregard of the law," which is a "doctrine of last resort – its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA appl[ies]." McCarthey Invs., 2007 WL 3254418, at *2 (alteration in original) (internal quotation marks omitted). Notably, the validity of the "manifest disregard" doctrine recently has been called into question by the U.S. Supreme Court. See Hall Street Assocs., L.L.C. v. Mattel, Inc., 522 U.S. 576 (2008). In any event, the "manifest disregard" doctrine, even assuming its continued application, is not applicable to confirmation proceedings under the New York Convention. See Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial y Comercial, 745 F. Supp. 172, 181 (S.D.N.Y. 1990) (the "manifest disregard doctrine is a creature of domestic arbitration cases, and that whatever the concept means, it 'does not rise to the level of contravening "public policy" as that phrase is used in Article V of the Convention,' and that 'the "manifest disregard" defense is not available to [respondent] within the context of the Convention.'" (quoting Brandeis Intsel Ltd. v. Calabrian Chems. Corp., 656 F. Supp. 160, 165 (S.D.N.Y. 1987)); see also Yusuf Ahmed Alghanim & Sons, 126 F.3d at 20 (explaining that none of the FAA's implied defenses, such as manifest disregard of the law, apply to the confirmation of a foreign arbitration award under the New York Convention if the award was "rendered in, or under the law of, a foreign jurisdiction").

12

As set forth below, none of the criteria for refusal set forth in the New York Convention are present in this case.  First, the parties to the Arbitration Agreement were competent, as evidenced by the fact that the Contract was signed on behalf of Eritrea by Maj. Gen. Teclai H/Selassie, the Commander in Chief of the Eritrean Air Force, and the Contract was "provided with the seal of the Eritrean Air Force, Ministry of Defence."  See Pet. Ex. A at 4, Ex. B at 6. Further, Eritrea was provided with adequate notice of the arbitration proceedings at each step of the proceedings.  See Tunik Decl. ¶¶ 12-16; Pet. Ex. A. at 19-20.  The Arbitration Award clearly relates to the "failure by either Party on the implementation of the present Contract" and was rendered by "the International Commercial Arbitration Court in Stockholm, Sweden" – and thus was rendered in accordance with the bargained-for Arbitration Clause in the Contract.  See Pet. Ex. A. at 8.  The Arbitration Award is final and binding on the parties, as it was not challenged by either party within three months from its date.  See Tunik Decl. ¶ 23; Pet. Ex. A at 30. Finally, the subject matter of the Arbitration Award – a breach of contract claim – was in compliance with the laws of Sweden, and there is no evidence that the enforcement of the Award would be contrary to the public policy of Sweden.  As the Arbitration Tribunal found:

> Initially it would appear that the parties had refrained from expressly designating the substantive law and therefore the country which the parties chose as the venue of the arbitration proceedings, i.e. Sweden, must be deemed to be the country whose substantive law would apply to the arbitration proceedings as well as to the execution of any award granted.
>
> On the other hand, since the case is about international sale of goods, there is reason to enforce the provisions of the Vienna Convention on Contracts for the International Sale of Goods which in effect reflects the *jus gentium* in all matters relating to international trade and contracts, regarding the nature of the dispute, as opposed to its execution.
>
> However, it appears that the straightforward facts of the case, which concern the supply of goods that were expressly specified and prove the supply of the goods to the State of Eritrea do not necessarily require involvement beyond the legal aspect, since the issues that remain to be deliberated on, including determining the interest for late payments,

DOCSNY-383831v01

punitive damages etc., are entrenched in the common law systems worldwide.

See Pet. Ex. A at 11-12.

Courts reviewing international arbitration awards in an enforcement proceeding should "avoid evidentiary and legal review generally, and may not second guess an arbitrator's resolution of a contract dispute." Convergia Networks, Inc. v. Huawei Techs. Co., No. 06 Civ. 6191 (PKC), 2008 WL 4787503, at *2 (S.D.N.Y. Oct. 30, 2008) (citations omitted) (internal quotation marks omitted). Consistent with the strong public policy in favor of global arbitration, "recognition and enforcement may be refused only in certain narrowly prescribed situations." La Societe Nationale, 585 F. Supp. at 61. The burden of proof is on the party resisting enforcement to demonstrate that one of the limited defenses set forth in the Convention applies. See Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508 F.2d 969, 973 (2d Cir. 1974); see also Bunge Agribus. Singapore Pte. Ltd. v. San He Hope Full Grain Oil Foods Prod. Co., No. 09 Civ. 4708 (SAS), 2009 WL 3050058, at *2 (S.D.N.Y. Sept. 23, 2009) ("The burden is a heavy one, as the showing required to avoid summary confirmance is high." (internal quotation marks omitted)).

Eritrea has not demonstrated – and cannot demonstrate – that any one of the defenses to enforcement set forth in the New York Convention applies to the Arbitration Award in this case. Accordingly, the Arbitration Award should be enforced in its entirety pursuant to the New York Convention.

## II.   PETITIONER'S MOTION FOR ENTRY OF A DEFAULT JUDGMENT FOR FAILURE TO TIMELY RESPOND TO THE PETITION TO CONFIRM THE ARBITRATION AWARD SHOULD BE GRANTED IN ITS ENTIRETY

Delizia's Petition, filed pursuant to the New York Convention, was timely filed, as it was within three years of the date that the Arbitration Award was rendered. See 9 U.S.C. § 207

14

("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."); see also Bunge Agribus, 2009 WL 3050058, at *3 (holding that confirmation proceeding was timely because it was "within the three year statute of limitations").[8]

Service of process on Respondent was effectuated via the Clerk of Court in accordance with 28 U.S.C. § 1608(a)(3), which governs service upon a foreign state or political subdivision of a foreign state. Bush Decl. ¶ 4. (A copy of the Clerk's Certificate of Mailing is attached to the Bush Declaration as Exhibit A.) On June 19, 2009, as evidenced by the Clerk's Certificate of Mailing Received (see 7/8/09 Docket Entry, a copy of which is annexed to the Bush Declaration as Exhibit B), the Clerk of the Court effectuated service upon Respondent of the following documents in English and certified translations of same in Tigrinya[9]:  (1) the Summons; (2) the Petition to Confirm the Arbitration Award; (3) the Memorandum of Law in Support of Petition to Confirm Arbitration Award; (4) Civil Cover Sheet; (5) Rule 7.1 Statement; (6) Order to File Under Seal; and (7) Notice of Suit, as required by 28 U.S.C. § 1608 and 22 C.F.R. 93.2 (attaching a copy of the Foreign Sovereign Immunities Act). Bush Decl. ¶ 4. The Respondent

---

[8]   As discussed above, "the pre-Convention provisions of the FAA – that is, the provisions of Chapter 1, 9 U.S.C. §§ 1-16 – continue to apply to the enforcement of foreign arbitral awards except to the extent that Chapter 1 conflicts with the Convention or Chapter 2." Phoenix Aktiengesellschaft v. Ecoplas, Inc., 391 F.3d 433, 435 (2d Cir. 2004). The statute of limitations is one area in which the FAA and the Convention conflict: "Section 9 [of the FAA], for example, requires applications for confirmation to be filed within one year of the arbitration, while § 207 [of the Convention] provides the parties with three years to seek confirmation." Id. at 437 n.3. Accordingly, the Second Circuit held that "[t]hough these additional differences between the sections [such as the statute of limitations] are not at  issue here, they bolster our finding of preemption by demonstrating that the Convention contemplates a significantly less restrictive approach to confirmation than the original FAA." Id.

[9]   We note that, while there is no documented official language for Eritrea, according to the United States Department of State and Eritrean government sources, Tigrinya is treated as the official language for the purposes of commercial transactions.

DOCSNY-383831v01

was also served, via the Clerk of the Court, with copies of Judge Swain's April 17, 2009 Order and the Memo Endorsed Order by Judge Swain and filed on April 28, 2009.  Bush Decl. ¶ 5. Subsequent correspondence, including Judge Swain's September 2, 2009 Order, was sent to Respondent via U.S. Mail.  Id.

Pursuant to 28 U.S.C. § 1608(d), Respondent was required to serve an answer or other responsive pleading within sixty (60) days after service was effectuated.  Since service was effectuated on June 19, 2009, Respondent's time to answer or otherwise respond to the Petition expired on August 18, 2009.  Id. ¶ 6.  To date, Respondent has not answered or otherwise responded to the Petition.  Id.  In an August 28, 2009 letter to the Court, counsel for Delizia requested permission to file a motion for a default judgment as a result of Eritrea's failure to answer or respond to the Petition.  Id. ¶ 7.  By Order dated September 2, 2009, the Court granted Delizia's request, and such Order was subsequently served on Eritrea.  Id.  On September 10, 2009, the Clerk of this Court signed the Clerk's Certificate of Default noting the default of Respondent.  Bush Decl. ¶ 8.  (A copy of the Clerk's Certificate is annexed to the Bush Declaration as Exhibit C.)

Where, as here, Petitioner has effectuated service of the Petition, and has established a claim for confirmation, its motion for default judgment and confirmation of arbitral award should be granted.  Moreover, since Eritrea has failed to oppose Delizia's Petition, "it has failed to show that any of the Article V defenses [set forth in the Convention] apply."  Bunge Agribus., 2009 WL 3050058, at *3 (confirming arbitration award in the amount due under the arbitral awards, plus accrued interest, where respondent did not oppose or otherwise respond to petitioner's motion).

16

This is so regardless of the fact that Eritrea is a sovereign, and failed to participate in the underlying arbitration proceedings.  See Energoinvest DD v. Democratic Republic of Congo, 355 F. Supp. 2d 9 (D.D.C. 2004) (granting plaintiff's motion for confirmation of arbitral award and default judgment against the Democratic Republic of Congo pursuant to the Foreign Sovereign Immunities Act and the New York Convention); Ipitrade Int'l, S.A. v. Federal Republic of Nigeria, 465 F. Supp. 824 (D.D.C. 1978) (granting plaintiff's motion for confirmation of arbitral award and default judgment against the Federal Republic of Nigeria pursuant to the Foreign Sovereign Immunities Act and the New York Convention).

## CONCLUSION

For all of the foregoing reasons, Petitioner's Motion for Confirmation of the Arbitration Award and Petitioner's Motion for Entry of a Default Judgment against Respondent for failure to timely respond to the Petition to Confirm the Arbitration Award should be granted in their entirety.

Dated: New York, New York
      January 8, 2010                  Respectfully submitted,

                               DICKSTEIN SHAPIRO LLP

                               By: _Lindsay A. Bush_
                                   Howard Graff (HG7057)
                                   Lindsay A. Bush (LB0391)
                                   Courtney E. Liotti (CL1011)
                               1633 Broadway
                               New York, New York 10019
                               (212) 277-6500
                               Attorneys for Petitioner Delizia Limited

17